(February 21, 1923.)

J. G. FRALICK, as Commissioner of Finance of the State of Idaho and Liquidating Agent of the BELLEVUE BANK AND TRUST COMPANY, an Insolvent Banking Corporation of the State of Idaho, Appellant, v. RAYMOND GUYER, Respondent.

[213 Pac. 337.]

CONSTITUTIONAL LAW — BANKING CORPORATIONS — STOCKHOLDERS — DOUBLE LIABILITY.

Sec. 17 of art. 11 of the state constitution does not authorize the legislature to enact a law imposing on stockholders of a banking corporation organized under the laws of the state of Idaho what is commonly called a "double liability."

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Raymond L. Givens, Judge.

Action brought by Commissioner of Finance to recover from a stockholder of a defunct bank a sum equal to the par value of the stock held by said stockholder. Defendant demurred. From judgment of dismissal, plaintiff appeals. *Affirmed.*

A. H. Conner, Attorney General, and Herbert Wing, Assistant, Oppenheim & Lampert and F. L. Stephan, for Appellant.

In art. 11, sec. 17, of the constitution, "the amount of stock owned by him" means that the stock is not the subject of the liability, but the measure of it, that is to say, that the legislature may provide that a shareholder may be made liable, not alone for the payment of his stock, but in addition thereto, for a sum measured by the amount of the stock. (6 Fletcher, Corp., sec. 4154.)

This is established particularly by the following interpretations: Minnesota constitutional provision: "To the amount of stock held or owned by him." (*Willis v. Mabon*, 48 Minn. 140, 31 Am. St. 626, 50 N. W. 1110, 16 L. R. A. 281;

*Bernheimer v. Converse,* 206 U. S. 516, 27 Sup. Ct. 755, 51 L. ed. 1163.)

Alabama constitutional provision: "To the amount of stock held or owned by him." (*Central Agricultural & Mechanical Assn. v. Alabama Gold Life Ins. Co.,* 70 Ala. 120; *McDonnell v. Alabama Gold Life Ins. Co.,* 85 Ala. 401, 5 So. 120.)

New York constitutional provision: "To the amount of their respective share or shares." (*Re Empire City Bank,* 18 N. Y. 218.)

New York statutory provision: "To the extent of their respective share or shares." (*Briggs v. Penniman,* 8 Cow. (N. Y.) 387, 18 Am. Dec. 454; *Slee v. Bloom,* 20 Johns. (N. Y.) 669; *Bank of Poughkeepsie v. Ibbotson,* 24 Wend. (N. Y.) 473.)

Pennsylvania statutory provision: "To the amount of stock held by each of them." (*Lane's Appeal,* 105 Pa. St. 49, 51 Am. Rep. 166.)

Illinois private charter: "To the amount of their stock." (*Root v. Sinnock,* 120 Ill. 350, 60 Am. Rep. 558, 11 N. E. 339.)

The foregoing measure is ˄sometimes doubled, and the liability becomes a triple liability. Colorado statutory provision: "In double the amount of the par value of the stock owned by them respectively." (*Zang v. Wyant,* 25 Colo. 551, 71 Am. St. 145, 56 Pac. 565.)

Pennsylvania private charter: "To the extent of double the amount of the stock subscribed for or held by them." (*Driesbach v. Price,* 133 Pa. St. 560, 19 Atl. 569.)

Maryland statutory provision: "Double the amount of stock at the par value held by such stockholders." (*Murphy v. Wheatley,* 102 Md. 501, 63 Atl. 62.)

Notwithstanding the *dictum* of Justice Stewart in *Wall v. Basin Mining Co.,* 16 Ida. 313, 101 Pac. 733, 22 L. R. A., N. S., 1013, the constitutional provision in Idaho has not been authoritatively construed in this state. (See dissenting opinion of Justice Ailshie in said case, 16 Ida. 337, 101 Pac. 741, 22 L. R. A., N. S., 1013; *Weil v. Defenbach,* 31

Ida. 258, 170 Pac. 103; *Feehan v. Kendrick,* 32 Ida. 220, 179 Pac. 507.)

· J. G. Hedrick, for Respondent.

C. S., sec. 5247, is unconstitutional and void in that it is in violation of the provisions of art. 11, sec. 17, of the constitution of Idaho. (*Wall v. Basin Mining Co.,* 16 Ida. 313, 101 Pac. 733, 22 L. R. A., N. S., 1013; *Schricker v. Ridings,* 65 Mo. 208; *Ochiltree v. Iowa Ry. Co.,* 21 Wall. (U. S.) 249, 22 L. ed. 546.)

Statutes imposing an additional liability upon a stockholder are in derogation of the common law and should be strictly construed, and courts will not carry the liability beyond the plain provisions of the statute; and if the statute is susceptible of more than one construction, it should receive that imposing the lightest burden. (3 R. C. L. 397; Thompson on Corp., sec. 4774.)·

As the constitutional provision referred to is in the exact language of the Missouri constitution, there can be no question but that the constitutional convention in adopting it intended to adopt the construction placed upon the Missouri provision. (*National Lead Co. v. United States,* 252 U. S. 140, 40 Sup. Ct. 237, 64 L. ed. 496; *Heald v. Dist. Col.,* 254 U. S. 20, 42 Sup. Ct. 434, 65 L. ed. 34; *Edwards v. Wabash Ry.,* 264 Fed. 610; vol. 2, pp. 1108, 1109, Proceedings and Debates, Constitutional Convention, 1889.)

James & Ryan, *Amici Curiae.*

Where a statutory or constitutional provision is adopted from another state, and the courts of that state have thereto-. fore placed a construction upon the language thereof, it is to be presumed that such provision was adopted in view of such judicial interpretation, and with the purpose of adopting such judicial interpretation. (*Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246; *Neil v. Public Utilities Commission,* 32 Ida. 44, 178 Pac. 271; *In re Schriber,* 19 Ida. 531, 114 Pac. 29, 37 L. R. A., N. S., 693.)

•

The court should in interpreting a constitutional provision construe it in such a way as to give effect to the intention of the constitutional body that framed such provision. (*Grice v. Clearwater Timber Co.,* 20 Ida. 70, 117 Pac. 112; 12 C. J. 711, sec. 64.)

An individual liability on the part of a stockholder, other than the liability to pay for the stock, was unknown at common law. (*Feehan v. Kendrick,* 32 Ida. 220, 179 Pac. 507; 14 C. J. 972, sec. 1507.)

If any individual liability upon the part of stockholders is permitted by sec. 17, art. 11, of the Idaho constitution, it exists solely for the benefit of creditors of the bank and cannot be collected by the commissioner of finance. (*Williams v. Carver,* 171 Cal. 658, 154 Pac. 472.)

Peterson & Coffin, *Amici Curiae.*

If there is such liability it is on account of a constitutional or statutory enactment. At common law stockholders of all corporations were liable only for the amount of stock owned by them. (14 C. J. 972, par. 1507; *Toner v. Faulkerson,* 125 Ind. 224, 25 N. E. 218.)

Any constitutional or statutory provision seeking to hold such stockholder for any amount in addition to the stock owned by him must be construed strictly in favor of such stockholder. (*Gray v. Coffin,* 9 Cush. (Mass.) 192.)

That the framers of the constitution desired to limit the liability of stockholders to the amount invested in the stock is almost as clear as the language which they employed to effectuate this design. (Vol. 2, Proceedings and Debates, Idaho Const. Convention, pp. 1107–1111.)

The constitution of Oregon is not more certain than ours, and yet in the case of *Ladd v. Cartwright,* 7 Or. 329, it was held that the stockholder was liable only for the amount of stock subscribed and unpaid.

DUNN, J.—This action was brought by appellant as Commissioner of Finance to recover from respondent a sum equal to the par value of respondent's stock in the Bellevue

Bank and Trust Company, said stock having been fully paid up.

Respondent demurred to the complaint on the ground that the facts stated did not constitute a cause of action. The demurrer was sustained, appellant declined to plead further and judgment of dismissal was thereupon entered, from which this appeal was taken.

C. S., sec. 5274, upon which the action is founded, reads in part as follows: "The stockholders of every incorporated bank or trust company doing a banking business shall be liable to the creditors of such bank or trust company to the amount of their stock at the par value thereof, in addition to the stock held by them."

Respondent defends the action on the ground that the portion of said section above quoted, in attempting to impose a double liability on a stockholder of a bank or trust company doing a banking business, is unconstitutional because of conflict with sec. 17 of art. 11 of the constitution of this state, which reads as follows: "Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him."

This provision (sec. 17) was undoubtedly taken from the Missouri state constitution, and its adoption here came many years after the supreme court of that state had construed the very clause now in dispute. The constitution of Missouri adopted in 1865 contained the following provision: "Dues from private corporations shall be secured by such means as may be prescribed by law; but in all cases each stockholder shall be individually liable over and above the stock by him or her owned, and any amount unpaid thereon, in a further sum at least equal in amount to such stock."

In 1870 the foregoing section was amended so as to read as follows: "Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable in any amount

over and above the amount of the stock owned by him or her.''

In *Schricker v. Ridings*, 65 Mo. 208, at page 215, in discussing the contention made there just as it is now made here, namely: that the expression, ''the amount of the stock owned by him,'' means an amount equal to and in addition to his stock, the supreme court of that state said: ''The language of the amendment should be construed with reference to the language of the section which it superseded, and when so considered all doubt as to its true construction will vanish. The individual liability created by the original provision was expressed to be a liability to an amount named 'over and above the stock owned, and any amount unpaid thereon.' Now, the phrase 'over and above the stock owned' as there used, clearly meant in addition to the stock owned. The prohibition contained in the amendment was 'in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him or her'; that is, in addition to the amount owned by him or her.''

While sec. 17 of art. 11, *supra*, is an original provision of our constitution and not one superseding a former affirmative provision clearly imposing a double liability, as in the Missouri case, no reason is seen in this fact for giving it a meaning different from that given by the supreme court of Missouri. The same meaning was in fact given it in the debates in our constitutional convention, and there is no record of dissent from that meaning by any one of the members of that convention. These debates would not be competent to change the plain meaning of a constitutional provision, but in this instance, if it be admitted that the provision in question is ambiguous, they would be most convincing as to what the members of that convention intended when they wrote into our state constitution as a part of sec. 17, art. 11, that ''in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him.''

In discussing the meaning of sec. 17 and the liability of an investor if that section were put into our constitution,

Mr. Poe said: "If it stands there, whoever may appropriate or lend his money to an enterprise of whatever nature it may be, or enter into a company that is incorporated, he knows when he puts that capital in there that he will only be liable to lose the amount that he subscribes in stock. To that extent his liability goes, no farther."

To this was added this statement of Mr. John T. Morgan, afterwards a distinguished member of this court: "I think, Mr. Chairman, the section ought not to be stricken out. If we go to the east to raise capital for the purpose of building railroads in this territory or in this state, a man worth a million dollars might be willing to take $50,000 of stock in this company if he knew what his liability was; but if he knew that he was liable to lose millions, he would not invest a single dollar. This is why I think it should be retained. He knows his liability; he may be willing to lose $50,000 because he can stand it, but he may not be willing to jeopardize his whole fortune."

The meaning manifestly intended by the convention would be the meaning presumed to have been intended by the people in adopting this provision if such meaning is clearly indicated by the words used, as we think it is.

The view herein expressed was laid down by this court in an opinion by the late Justice Stewart. (*Wall v. Basin Mining Co.,* 16 Ida. 313, 101 Pac. 733, 22 L. R. A., N. S., 1013.) Whether or not that holding of the court on the point in controversy here was *dictum,* as contended by appellant, it is not necessary here to decide. In either view it was an able discussion and a correct decision of the question involved in the case at bar.

There are numerous constitutional and statutory provisions to the effect that stockholders in corporations shall be liable "to the amount of their stock," or "to the extent of their stock," which have been interpreted by other courts as imposing a double liability on the stockholder, but it is unnecessary to discuss them in detail. Such provisions, whether constitutional or statutory, are affirmative in form and drawn for the purpose of imposing on the stockholder

a personal liability equal to the amount of his stock in addition to his liability to pay to the corporation the unpaid balance, if any, on his stock subscription. Whatever may be said as to the correct interpretation of such provisions, it seems to us the reasoning is not applicable to our sec. 17 of art. 11. It is not sufficient to say, as was said in one case in reply to the argument against double liability: "This would give the public no security, beyond what they had under existing laws; for the assets of the corporation, and any unpaid subscriptions to its stock, were always liable to its creditors. This is the ordinary liability of the corporation. The constitution adds the individual responsibility of the stockholders; and the measure of that liability is the amount, or as it would be better expressed, a sum equal to the amount of their respective shares of stock." (*Matter of the Empire City Bank,* 18 N. Y. 199.)

This reasoning is applicable to a provision whose manifest purpose is to create an additional individual liability, but not to one whose purpose is to prevent the imposition of additional liability.

Counsel for appellant cite the case of *Willis v. St. Paul Sanitation Co.,* 48 Minn. 140, 31 Am. St. 626, 50 N. W. 1110, 16 L. R. A. 281, involving the construction of art. 10, sec. 3, of the Minnesota constitution, which provides that "Each stockholder in any corporation (excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business) shall be liable to the amount of stock held or owned by him." In holding that this provision imposes a double liability on the stockholders the court used this language:

"This is the meaning which has been invariably attached to this provision of our constitution. It is the one attributed to it by this court in numerous cases, although never in the form of a direct and authoritative decision; and we do not believe that the construction now sought to be placed upon it ever occurred to, or was ever advanced by any one until suggested by counsel in the present case. Any such construction would render the provision meaningless and useless

for all that would be accomplished by it was already fully covered by the law. If a person had subscribed for stock and had not paid for it the amount agreed of course he was liable to the corporation and through it to its creditors; and if the stock had been issued to him as paid-up stock when not in fact paid for under such circumstances as to operate as a fraud upon creditors he was upon well-settled principles liable to them as for unpaid stock subscriptions. The construction contended for would give the public no security beyond what they already had under the existing law. Its absurdity is rendered apparent when considered in connection with the amendment of November 5, 1872, inclosed in parentheses; for then the whole section would mean that, while the stockholders in all other corporations should be liable to pay once for their stock at its face amount, yet stockholders in manufacturing corporations need not be required to do so. The obvious intention of the provision was to add to the ordinary liability of a corporation for its debts the individual liability of the stockholders to a limited amount, and that the measure of that liability should be a sum equal to the amount of stock owned or held by them. This stock is not the subject of the liability, but the measure of it; in other words, the stockholders are liable, not for the stock, but, in addition thereto, for a sum measured. by the amount of the stock.''

If we hold in mind the purpose of the Minnesota constitutional provision above quoted and other similar constitutional and statutory provisions, and the purpose of our constitutional provision, it will be clear that our provision cannot involve a double liability. In the Minnesota case it is true that the ''amount of stock'' was used as the measure of the stockholder's liability and it was clear that by the language used it was intended to impose a liability measured by the ''amount of stock'' in addition to the common-law liability to pay the unpaid portion, if any, of the par value of the stock.

But in the case of our constitutional provision the purpose was not to impose a liability. It was to deny to the legis-

lature the power to place upon the stockholder any individual liability beyond the "amount of stock" owned by him. In our constitutional provision the "amount of stock" is not used as a measure of liability, because the provision in question is not creating a liability, as in the Minnesota case, but is establishing a limit beyond which the legislature may not go, which limit is the common-law liability to pay up any unpaid portion of the par value of the stock.

Let us suppose that sec. 17 of art. 11 of our constitution read as follows: "Dues from private corporations shall be secured by such means as may be prescribed by law, but in every case a stockholder shall be individually liable in a sum equal to the amount of his stock over and above the amount of stock owned by him."

Without question we think such a provision would impose on the stockholder the double liability contended for by appellant, but nothing more. Can it be possible that a provision so worded would impose upon the stockholder no individual liability greater than that which says, "but in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him?" We think not, but if the construction of sec. 17, art. 11, of our constitution contended for by appellant is correct, then the supposed section set out above would have no meaning different from sec. 17 of art. 11 of our constitution.

The language used in this section is simple and we think the meaning is clear. The expression, "the amount of stock," has reference to and means the stock itself. At common law the stockholder was liable to the corporation, if necessary for the payment of its debts, for any unpaid balance of the par value of his stock. (*Feehan v. Kendrick,* 32 Ida. 220, 179 Pac. 507; 7 R. C. L. 356.) The provision that "in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him" means that when the face value of the stock has been paid to the corporation there can be added thereto no personal liability of the stockholder in any amount.

Additional weight is given to the view herein expressed when we consider the action taken by the first state legislature of Idaho. At the time of framing and adopting the constitutional provision in question, sec. 2609 of the Revised Statutes of Idaho provided that "Each stockholder of a corporation is individually and personally liable for such portions of its debts and liabilities as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares of the corporation, and for a like proportion only, of each debt or claim against the corporation."

At the first session of the state legislature after the adoption of the constitution said section of the territorial law was amended by an act entitled "An Act to amend section two thousand six hundred and nine of the Revised Statutes, as to the personal liability of stockholders of corporations, and to conform the same to section seventeen, of article eleven of the Constitution," Session Laws, 1891, p. 172, so that it read in part as follows:

"Sec. 2609. Each stockholder of a corporation is individually and personally liable for its debts and liabilities to the full amount unpaid upon the par or face value of the stock or shares owned by him . . . . and nothing in this title must be construed to render any stockholder individually or personally liable, as such stockholder, for debts or liabilities of the corporation, either at the suit of a creditor or for assessments or calls, to an amount exceeding the balance unpaid upon his stock or the difference between the amount that has been actually paid upon his stock and the par or face value thereof except when so liable on the ground of fraud or misrepresentation, or concealment, or for neglect or misconduct as an officer, agent, stockholder, or member of the corporation; . . . . "

While this legislative interpretation of the constitutional provision is not decisive, it is entitled to consideration in determining the question here involved.

We concede the desirability of giving the public greater security by way of individual liability of the stockholders

for the debts of a banking corporation in an amount at least equal to the stock they hold over and above the amount of such stock, but neither the legislature nor the courts can give the public this particular kind of security in the face of the limitation imposed by said section 17 of art. 11 of our state constitution.

The judgment is affirmed, with costs to respondent.

William E. Lee, J., and T. Bailey Lee, Dist. J., concur.

WILLIAM A. LEE, J., Dissenting.—I am unable to concur in the conclusion of the majority opinion that C. S., sec. 5247, which makes the stockholders in every incorporated bank or trust company of this state liable to its creditors to the amount of their stock, at par value, in addition to the stock held by them, is in contravention of sec. 17, art. 11, of the constitution, and therefore void.

If it was the purpose of this section, as the majority opinion seems to hold, to declare that stockholders in a corporation shall be liable for their unpaid subscriptions to the capital stock, then it is meaningless, for that liability has always existed. It is a fundamental principle of the law of contracts that one who purchases a thing of value is liable for the payment of the purchase price.

If it was the purpose of the learned men who composed the constitutional convention, some of whom were among the foremost lawyers of the country, to place a limitation upon the power of the legislature to make a stockholder of a corporation liable only to the extent of his unpaid subscription to its capital stock, it is quite inexplicable that they should have resorted to this ambiguous and uncertain manner of stating such limitation, instead of declaring that: "Stockholders in a corporation shall not be personally liable to its creditors beyond their unpaid subscriptions."

Much stress is placed upon casual remarks of two or three members of the convention relative to the meaning and effect that should be given this section, but I do not think from the brevity of these remarks and their general tenor that

they afford any guide as to the meaning the convention intended this provision to have. It is a cardinal rule of construction, which is given even more force with reference to a constitutional provision than to a legislative act, that the debates of the body formulating such provision may be referred to only when the language used is so ambiguous and uncertain that its meaning cannot otherwise be definitely determined. But it has always been held that such remarks cannot control against the plain intent of the language used, and in any event, it is highly improbable that those who formulated this provision, or the majority of the convention which adopted it, or the people who afterward ratified it, gave it such a construction as it is now being given.

As early as 1905, when the legislature passed the first general banking law, it gave this provision the construction that the state is now contending for, and passed the liability clause which is now C. S., sec. 5247. Since then, this liability provision has been quite generally regarded as valid, to such an extent that it has become a rule of property, under which stockholders in insolvent banks and trust companies have been required to pay large sums of money to the creditors of such defunct institutions. In view of all of these considerations, and now after the lapse of more than thirty-three years since this provision was incorporated into the organic law, I think it should not now be given this construction without the clearest and most compelling reasons for so doing, which I do not think exist.

It may well be that as to the ordinary private corporation not engaged in a business which creates a fiduciary relationship between it and those transacting business with such corporation, the personal or individual liability of a stockholder should be limited to his contribution to its capital stock. The legislature, in creating this increased liability as to stockholders of banks and trust companies, recognized a rule of universal application, that is, that the business of banks and trust companies stands in a class by itself; that these institutions are necessary to the economic welfare and prosperity of all other classes of business; that other private cor-

porations operate upon their own capitalization and such credit as their capitalization and business methods secure for them, but that banks and trust companies, because of the very nature of their business, must in a very large measure depend for their successful operation upon the contributions of capital by their depositors and patrons; and for these reasons the law has wisely provided that banks and trust companies hold these funds in a fiduciary capacity. In all civilized countries, laws governing this class of institutions have been especially enacted for the purpose of giving the greatest protection to depositors who intrust banks and trust companies with vast sums of money, which constitute the greater portion of their working capital, as well as the circulating medium of the country. The severity of the laws governing banking institutions, with the rigid supervision exercised over them and the severe penalties that follow infractions of these laws, could not be tolerated with regard to the business of other private corporations, and if attempted, would result in their destruction. But they are found necessary with regard to banks and trust companies because of the trust relationship that exists, and are acquiesced in by the banks and trust companies themselves and regarded as in a large measure essential to their welfare and successful operation. It is a matter of common knowledge, of world-wide application, that every impairment of confidence in the banking institutions of a country is followed by most disastrous consequences, and results in widespread distress to all classes of people.

It is insisted that because the supreme court of Missouri in *Schricker v. Ridings,* 65 Mo. 208, gave this construction to a like clause in that state's constitution, it should be presumed that Idaho adopted the provision from that state, with the construction there given it, a rule frequently followed with regard to statutes taken from other jurisdictions. With due regard for this rule of construction and for the decision of the Missouri court, it is not probable that the people of Idaho adopted this provision with any such view in mind. The only difference between the provision as it appears in

the Idaho and Missouri constitutions and those of many other of the states is that the inhibition placed upon the legislature as to how far it can make the stockholders of a corporation individually liable is stated negatively in Idaho and Missouri, while in the other constitutions it is stated affirmatively.

Sec. 17 of art. 11 in part reads: " . . . . But in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him," clearly meaning that his individual liability shall not exceed an amount measured by the stock he owns. The phrase "the amount of stock owned by him" does not mean that the stock is the subject of the liability, but the measure of it. (6 Fletcher on Corporations, sec. 4154.)

The Minnesota constitution reads that the stockholder shall be liable to "the amount of stock held or owned by him," and it has always been held that his additional liability cannot exceed the amount of his stock. (*Willis v. Mabon* (*Willis v. St. Paul Sanitation Co.*), 48 Minn. 140, 31 Am. St. 626, 50 N. W. 1110, 16 L. R. A. 281; *Bernheimer v. Converse,* 206 U. S. 516, 27 Sup. Ct. 755, 51 L. ed. 1163.)

The Alabama constitution is the same, and has been in like manner construed. (*Central Agricultural & Mechanical Assn. v. Alabama Gold Life Ins. Co.,* 70 Ala. 120; *McDonnell v. Alabama Gold Life Ins. Co.,* 85 Ala. 401, 5 So. 120.)

The New York constitution is "to the amount of their respective share or shares," and is held in *Re Empire City Bank,* 18 N. Y. 218, to limit the stockholder's liability over and above their stock to a like amount. (*Bank of Poughkeepsie v. Ibbotson,* 24 Wend. (N. Y.) 473.)

The Pennsylvania statute reads "to the amount of stock held by each of them," and in *Lane's Appeal,* 105 Pa. St. 49, 51 Am. Rep. 166, is held to mean a personal liability equivalent to the amount of stock he owns.

See, also, *Root v. Sinnock,* 120 Ill. 350, 60 Am. Rep. 558, 11 N. E. 339.

In some states, notably Colorado, the provision reads "in double the amount of the stock owned by them respectively."

(*Zang v. Wyant,* 25 Colo. 551, 71 Am. St. 145, 56 Pac. 565.) See, also, *Driesbach v. Price (Parrish's Appeal)*, 133 Pa. St. 560, 19 Atl. 569; *Murphy v. Wheatley,* 102 Md. 501, 63 Atl. 62; *Pettibone v. McGraw,* 6 Mich. 441; Morawetz on Private Corporations, secs. 881, 882; Thompson on Liability of Stockholders, sec. 37.)

From the foregoing authorities and others of like effect that might be cited, I think the majority opinion is against the weight of authority and is without support in reason, for as said in *Heydenfeldt v. Daney G. & S. M. Co.,* 93 U. S. 634, 23 L. ed. 995, if an interpretation of a law leads to an absurd result, and is contrary to the evident meaning of the act taken as a whole, it should be rejected; and there is no better way of discovering the true meaning of a law than by considering the necessity for it and the cause which induced its adoption.

In view of the present state of the public mind caused by disturbed business conditions, which are the inevitable incident of the destructive war, the legislative policy with regard to the law relating to banks and trust companies, which has been a part of the law for many years, should not be changed by judicial construction except for the most impelling reasons, which I do not think exist in the instant case. I am therefore unable to concur in the majority opinion.

I am authorized to say that Mr. Justice McCarthy concurs in the conclusion reached in this dissenting opinion.